## A. M. CLAYBAUGH v. E. V. GOODCHILD.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF FAYETTE COUNTY.

Argued May 12, 1890—Decided May 26, 1890.

1. On the sale, by a written contract, of a newspaper, including "the good-will, subscription list, and subscription accounts," but with a reservation of the book accounts, possession to be delivered at a future date, the purchaser is entitled to the money collected on subscriptions, between the date of the contract and date of delivery of possession under it.

2. Where the defence is made, that the right of the seller to retain his interest in the subscription list till delivery was omitted from the contract by mutual mistake, it was not error to charge that that fact must be made to appear "clearly and satisfactorily, by clear, full and definite testimony to the satisfaction of the jury."

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 75 July Term 1889, Sup. Ct.; court below, No. 292 March Term 1887, C. P.

On March 7, 1887, an appeal was entered from the judgment of a justice of the peace in an action by A. M. Claybaugh against E. V. Goodchild. Issue.

At the trial on December 15, 1885, it was shown that on January 16, 1885, E. V. Goodchild, the defendant, then owning with one Henry P. Snyder a newspaper called the Keystone Courier, entered into a written contract with A. M. Claybaugh, the plaintiff, the material portion of which provided:

"Memorandum of agreement made this 16th day of January, A. D. 1885, by and between E. V. Goodchild . . . . . party of the first part, and A. M. Claybaugh . . . . . party of the second

Charge of Court below.

part, witnesseth: That for the consideration hereinafter men-
tioned, the said party of the first part hereby sells unto the
said party of the second part, or his assigns, all his undivided
one half interest in the Keystone Courier, a paper published
in Connellsville, Pa., including all the fixtures, presses, furni-
ture, type, forms, stands, and all and every article of furniture,
machinery, etc., contained in the office of said paper, or con-
nected with the printing and publishing thereof; also his one
half interest in the good-will, subscription list, and subscrip-
tion accounts, and also his undivided interest in the lease of
the building in which said paper is published; the said Good-
child, however, reserving to himself his interest in the book
accounts of the firm of Snyder & Goodchild. In consideration
thereof, the said party of the second part hereby agrees to pay
unto the said party of the first part, the sum of ($3,000) three
thousand dollars, in manner following to-wit: . . . . But all
outstanding debts of the firm of Snyder & Goodchild are ex-
pressly assumed by the said firm, and the said party of the
second part is to be under no liability therefor. Possession of
the interest sold under this article of agreement to be given
to the said party of the second part on the 1st day of Febru-
ary, A. D. 1885."

From the date of the contract, until February 1, 1885, when
possession was given to the plaintiff, the defendant remained in
possession as theretofore, and during that time subscriptions
were paid in, the one half of which, amounting to $275.48, were
received by the defendant and retained by him. To recover
that amount this suit was brought.

At the close of the testimony, the court, EWING, J., charged
the jury:

The defendant requests the court to charge the jury as follows:

1. That under the terms of the written agreement between
A. M. Claybaugh and E. V. Goodchild, said E. V. Goodchild
would be entitled to have for his own use the subscription list
from January 16, 1885, to February 1, 1885.

Answer: Refused.[1]

The foundation of the action is the article of agreement en-
tered into on January 16, 1885, between the plaintiff and de-
fendant in this case, by which the plaintiff bought from the

Charge of Court below.

defendant, his interest in that paper and the fixtures and machinery in connection therewith, and among other things the subscription account. You have heard the agreement read; and from it you will see that it specifies that at that time, the date of the agreement, Mr. Goodchild sells to Mr. Claybaugh these articles. A further provision made in that agreement is, that possession is not to be given until the first of February following. Now the plaintiff contends that by the provisions of that article of agreement the subscription accounts as they stood at the date of that agreement, so far as Mr. Goodchild's interest therein is concerned, passed to Mr. Claybaugh; and that afterwards, Mr. Goodchild having collected, as he has admitted in this case, $225, between that date and the first of February following, the plaintiff is entitled to recover that amount with interest from that date to this time.

[According to the terms of the agreement, as I understood it when the counsel read it, my attention not having been particularly called to its provisions, however, it passed those subscription accounts at that date, so far as Mr. Goodchild's interest therein was concerned, to Mr. Claybaugh. He became the owner at that date, but the delivery of possession was deferred until the first of February; and, in that respect, it differed no more in regard to the subscription accounts than it did in regard to the printing presses and the other machinery and fixtures connected with the office which he was buying; and, in the absence of any agreement to the contrary, or any mistake in the drawing of that article of agreement, the plaintiff would be entitled to recover in this action.] [3]

[Now the contention of the defendant here is, that it was the agreement that he was to have the right to his portion of all the subscription accounts that could be collected and would be collected between the date of the agreement and the first of February following, and that it was not embraced in the agreement as a matter of mistake on the part of the parties when the agreement was drawn up. Mr. Goodchild testified that that was the distinct understanding and agreement, and he has introduced the testimony of Mr. Snyder, who, he claims, corroborates him in that respect. Now it is the duty of a party setting up accident or mistake in the drawing of a written agreement, to prove that fact clearly and satisfactorily by clear, full and definite testimony

to the satisfaction of the jury. The law does not allow a written instrument to be impeached in its terms upon any less satisfactory testimony; and, unless they have done that, the plaintiff would be entitled to the verdict of the jury in this case.] [2]

In addition to Mr. Goodchild's own testimony, which is direct and explicit enough so far as he is concerned as a witness, the testimony of Mr. Snyder was introduced, which as I have said, the defendant claims corroborates him. Mr. Snyder says that his understanding of the agreement between the parties, was, that the subscription accounts as collected between the date of the agreement and the first of the following February, belonged to the old firm of Snyder & Goodchild; at least, they were not to pass under that agreement, but only the subscriptions that remained at the date when he was to have possession of the establishment were to be his, but he does not remember any statement of the plaintiff to that effect. At another time he says he heard the parties bargaining about the arrangement, and that he understood from what was said at the time, that such was the agreement. Well, that testimony is hardly sufficient; it does not come up to the requirement that it ought to be explicit in regard to these matters, in order to vary the terms of a written agreement. He says in another place, in his testimony, that he got his impression of the agreement from what Mr. Goodchild said about it, and from his own construction of the written agreement. That would not be sufficient to relieve them here in this case. They must prove that it was the agreement, and was not specified in the written agreement through mistake.

Now, in addition to the testimony on the part of the plaintiff, as to what occurred at the time the agreement was drawn, he denied that there was any understanding or agreement at all between him and Mr. Goodchild at any previous date, by which Mr. Goodchild was to have his share of the subscription account collected between the date of the agreement and the first of the following February, and he says that his money was paid, and the price agreed upon, upon calculation and understanding of the amount due upon the subscription account; that he took that into consideration in determining what amount he would be willing to give for the paper.

[So, we say to you, briefly, that the plaintiff is entitled to recover in this action upon that agreement as it stands, unless

the defendant has, by full, definite and satisfactory testimony convinced you that there was a mistake in the drawing of the agreement, and that the real and true agreement between the parties was, that Mr. Goodchild had a right to collect the accounts up to the first of February. In the absence of any such proof, the plaintiff would be entitled to your verdict for the amount claimed up to the first of February, with interest.] [4] . . . .

—The jury returned a verdict in favor of the plaintiff for $275.48. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, assigning for error :

1. The refusal of the plaintiff's point.[1]

2–4. The parts of the charge embraced in [ ] [2 to 4]

*Mr. Edward Campbell* (with him *Mr. P. S. Newmyer*), for the appellant.

*Mr. R. H. Lindsey*, for the appellee.

PER CURIAM :

The only question in this case was whether defendant had a right to appropriate to his own use all the subscription accounts he was able to collect between the 16th of January, 1885, the date of his agreement to sell, and the 1st of February ensuing. That question was fairly submitted to the jury in a clear and comprehensive charge, in which the learned judge rightly construed the written agreement of the parties, and correctly instructed them as to the kind of evidence and degree of proof necessary to reform such an instrument.

There was no error in refusing to affirm defendant's point wherein he requested the learned judge to charge, in substance, that, under the terms of the written agreement of January 16, 1885, between plaintiff and defendant, the latter had a right to collect and appropriate to his own use the subscription accounts for which this suit is brought. The agreement, as written, gave him no such right, and the verdict of the jury settles the fact that nothing was omitted from the agreement, by mistake or otherwise, that would have given him the right he claimed. Nor was there any error in those portions of the charge recited in the three remaining specifications, respectively.

Statement of Facts.

The case was well tried, and we find nothing in the record that would justify a reversal of the judgment.

Judgment affirmed.