# State Hospital for the Insane *v.* Philadelphia County, Appellant.

*Statute of limitations—Set-off—Assumpsit.*

Where the statute of limitations may be successfully set up against a claim sought to be enforced in an action of assumpsit, it may also be set up against the same claim when it is sought to be used as a set-off.

*Statute of limitations—Trust—State hospital for insane.*

Where a county pays money to the trustees of a state hospital for the insane, and the money is applied to the use of the hospital, and the county subsequently alleges that the payment was made by mistake on the part of the county, and by reason of the fraudulent concealment of the facts by the trustees, the county must institute its action to recover the money within six years, or otherwise be barred by the statute. In such a case the money continues to belong to the county, and is not held by the trustees for public purposes.

*Statute of limitations—Fraud—State hospital for insane—Acts of June 13, 1883, P. L. 92 and May 21, 1889, P. L. 258.*

The officers of the state hospital for the insane for the southeastern district of Pennsylvania between the years 1885 and 1889, submitted to the county of Philadelphia bills for the maintenance of indigent insane, based on a construction of the act of 1883, made by themselves. These bills were paid. After the passage of the act of 1889, the bills were made out strictly in accordance with the latter act, and were rendered for each quarter without reference to any prior quarter. The bill had attached to it a certificate and affidavit stating that no part of the amount due for the quarter named in the bill had been paid, and that there was no deduction or set-off against it to which the county was entitled to a credit. In a suit by the hospital against the county brought more than six years after 1889, the county endeavored to set off overpayments alleged to have been made by reason of the wrongful construction of the act of 1883. The county claimed the certificate and affidavit attached to the bills rendered after 1889, and before the statute of limitations had run were false in stating that the county was not entitled to any set-off. The evidence showed that the bills rendered between 1885 and 1889, and the reports of the hospital, made no concealment of the rate charged, and there was no evidence of any other concealment by the officials of the hospital. *Held,* that the claim of the county was barred by the statute of limitations.

Argued Jan. 28, 1903. Appeal, No. 223, Jan. T., 1902, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1899, No. 97, on verdict for plaintiff in case of Trustees of the State Hospital for the Insane of the Southeastern District of

Pennsylvania v. Philadelphia County.   Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Assumpsit to recover for the maintenance of the insane poor.   Before SULZBERGER, J.

The opinion of the Supreme Court states the facts.

The court charged as follows:

The amount sought to be recovered by the city, claimed in its notice of special matter, was paid by it to the plaintiff more than six years before the bringing of the present action, and even though paid by the city erroneously is barred by the statute of limitations unless you find that subsequently to the payment, and within six years of the bringing of the present action, the plaintiff made affirmative efforts to divert or mislead the defendant from discovering that the payment had been improperly exacted.

As supplemental to the point which the plaintiff has thus asked me to charge, and which I have charged, I now say to you that there is not in the whole body of evidence presented to the court and jury, any evidence that can be submitted to the jury, tending to show that the plaintiff made affirmative efforts to divert or mislead the defendant from discovering that the original payments, at any time between 1885 and 1889, had been improperly exacted, and that, as a necessary consequence of the statement of these propositions of law and fact, your verdict must be for the plaintiff.   The amount will be settled between counsel, and submitted to you.

Verdict and judgment for plaintiff for $67,508.28.   Defendant appealed.

*Error assigned* was the charge of the court.

*J. W. Catharine,* assistant city solicitor, with him *John L. Kinsey,* city solicitor, for appellant.—The statute of limitations is restricted in its scope to actions of debt founded upon a lending or contract in fact: Outwater v. Passaic, 51 N. J. L. 345 (18 Atl. Repr. 164); Pease v. Howard, 14 Johns. 479; Richards v. Bickley, 13 S. & R. 395; Thompson v. McGaw, 2 Watts, 161; Bullard v. Bell, 1 Mason, 243; Roller & Shoemaker v. Meredith, 4 Pa. Superior Ct. 461.

The statute is no bar to the county's claim of credit, as the moneys were paid to and are held by the trustees for public purposes : Logan Co. v. Lincoln City, 81 Ill. 156 ; Trustees of Schools v. Arnold, 58 Ill. App. 103.

In any event, the statute of limitation, did not begin to run against the county's right to claim credit for overpayments until within one year of suit brought: Davis v. Monroe, 187 Pa. 212 ; Tully v. Felton, 177 Pa. 344.

Where the parties are so related that it is the duty of one to notify the other of facts or circumstances relating to the subject-matter in dispute, and there is a failure of such duty, the statute does not run until the other party learns of such facts or circumstances : Wood on Lim. of Actions, sec. 276 ; Sankey v. McElevey, 104 Pa. 265 ; Smith v. Blachley, 198 Pa. 173 ; Morgan v. Tener, 83 Pa. 305 ; Wickersham v. Lee, 83 Pa. 416.

*John G. Johnson*, with him *Montgomery Evans*, for appellees. —There were no circumstances of fraudulent concealment which prevented the running of the statute : Smith v. Blachley, 198 Pa. 173 ; Tully v. Felton, 177 Pa. 344.

OPINION BY MR. JUSTICE MESTREZAT, April 20, 1903 :

The learned trial judge directed the jury to return a verdict for the plaintiffs on the ground . that the counterclaim, interposed as a defense to the action, was barred by the statute of limitations. The correctness of this ruling is the only question raised by this appeal.

The state hospital for the insane for the southeastern district of Pennsylvania at Norristown was erected pursuant to the provisions of the Act of May 5, 1876, P. L. 121. The hospital was built for the care and maintenance of the insane of the city and county of Philadelphia and certain other counties in the southeastern part of the state. The act provided for the selection of a site and the erection and management of the hospital. The expenses of the care and maintenance of the indigent insane were chargeable to the counties respectively from which they were committed. The Act of June 13, 1883, P. L. 92, imposed the cost of the care and treatment of the indigent insane in the state hospitals for the insane equally

on the state and the county, and provided that the maximum charge to the county should not exceed, including all charges, the sum of $2.00 a week for each person. It also enacted that the cost per capita should not exceed $3.50 a week, except for clothing for which an additional charge not exceeding fifty cents per week was allowed. By the Act of May 21, 1889, P. L. 258, the expenses for the maintenance of the insane in the state hospitals was fixed at the uniform rate of $1.75 per week for each person, including clothing, "chargeable to the respective counties or poor districts from which such insane shall come, and the excess over $1.75 shall be paid by the state; but in no case shall the said excess exceed $2.00 per week for each indigent insane person."

The hospital at Norristown was opened for the reception of patients on July 12, 1880, and since that date the indigent insane of the respective counties for which it was erected have been maintained there. This action was brought to recover the sum of $52,651.72, the balance due the plaintiffs for the care and treatment of the indigent insane of Philadelphia county for the quarters ending August 31 and November 30, 1896, and February 28 and May 31, 1897. The defense is that the plaintiffs during the years 1885 to 1889, inclusive, had illegally and fraudulently charged and collected from the county for the maintenance of its insane an amount equal to the claim in suit in excess of the amount properly chargeable against the county under the act of 1883. This defense was met by a plea of the statute of limitations. The county replied to the plea that the statute was not a bar to this claim because (1) it does not apply to claims of this character; (2) the moneys constituting the alleged overcharge are held by the plaintiffs for public purposes; and (3) the statute did not begin to run against the claim until within six years of the bringing of the suit by reason of the active concealment of the alleged original fraud.

1. The reasons assigned by the county why the statute of limitations is not a bar to its claim are wholly untenable and cannot avail to defeat a recovery in this action. Its claim, as we have seen, is for moneys alleged to have been paid to the plaintiffs in excess of the amount due for the care and treatment of its indigent insane. Regarding the overpayments as having been made either under a mistake of fact or by reason

of the fraud of the plaintiffs, and conceding that the county had a right to the return of the money, the proper action would unquestionably have been assumpsit, in which, it is settled, the statute may be pleaded in bar of the claim. If, therefore, instead of attempting to enforce this claim by way of set-off or having it applied to its indebtedness to the plaintiffs, the county had brought an action against the trustees to recover the amount of the overpayments, the statute could have been successfully pleaded. The same right to invoke the application of the statute exists here. Hinkley v. Walters, 8 Watts, 260.

2. The learned counsel for the defendant further contend that the statute cannot be successfully pleaded here because the money received by the plaintiffs as overcharges is held by them for public purposes. Neither of the two Illinois cases cited in support of the position sustains the contention. In the first case, it was held that the statute does not apply in an action brought by a city against a county to recover trust funds held by the latter for the city. The other case was an action on an official bond by a school treasurer for failure to pay over to his successor in office the money received by him. Here no express trust was created by the parties nor could the money be held by the trustees for any public purpose. If, as claimed by the defendant, it was paid to the plaintiffs by mistake on the part of the county and by reason of the fraudulent concealment of the facts by the plaintiffs, the money continued to belong to the county and was not held for the use of the hospital. The act of illegally charging and receiving it under the circumstances and refusing to repay it gave a cause of action against the plaintiffs irrespective of the fact that they received it as trustees and applied it to the maintenance of the indigent insane.

3. It is strenuously urged by the defendant that subsequently to the date of the alleged overpayments and within six years of the bringing of this suit, the plaintiffs through the action of their officers diverted and misled the county officials from discovering that the payments had been improperly exacted, and that therefore the statute of limitations does not bar the claim.

Each of the quarterly bills presented by the plaintiffs to the defendant subsequent to 1889 was authenticated by the cer-

tificate of the executive committee of the board of trustees and by the affidavit of the superintendent. This is the action complained of by the county as tending "to divert and mislead the county officials." It is difficult to see how such action by the hospital authorities could mislead the county officials as to charges made against the county for the years 1885 to 1889. It will be observed that the act of 1889 changed the rate fixed by the act of 1883 at which the indigent insane were maintained and imposed a uniform rate of $1.75 on the county. Thereafter the quarterly bills were made out and presented to the county at that rate. Each of these bills included only an account for the quarter for which it was rendered and did not purport to charge or credit the county with any item of a prior date. The bills rendered subsequently to 1889 were correct in every detail as to the expenses incurred for the quarter. This we understand to be conceded. But it is claimed that the certificate and affidavit attached to the bill were misleading in stating that no part of the amount due for the quarter named in the bill had been paid and that there was no deduction or set off against it to which the county was entitled to a credit. This alleged false statement is predicated upon the theory that the hospital authorities had no right to charge the maximum rate for the maintenance of the insane under the act of 1883, and that the county was entitled to a credit on subsequent bills for any sum charged in excess of the actual cost of maintenance. This is the construction now put upon the act of 1883 by the present county officials, but the trustees of the hospital interpreted the act as authorizing them to charge $2.00 per week for each person, the maximum rate fixed by the act of 1883 and the sum claimed in the bills presented to, and paid by, the county. That this was the construction put upon the act by the trustees and that they rendered the quarterly bills in good faith conclusively appears by the statement in each of their annual reports for the years 1885 to 1889 as follows: "When the law putting in operation the act of June 13, 1883, was passed, the trustees availed themselves of the terms of its provisions to charge the maximum price for board and clothing, namely, $3.50 for board and fifty cents for clothing."

But if the present county officials properly interpret the act of 1883 and the plaintiffs were authorized to charge only the

actual expenses of maintenance, excluding the cost of permanent improvements, the trustees during the years from 1885 to 1889 concealed neither the rate per patient charged the county nor the items that constituted the basis upon which the charge was made.   This is established by the uncontradicted evidence in the case.   The superintendent of the hospital was called as a witness by the county and he testified that in ascertaining the rate of maintenance for the years 1885 to 1889 the entire expenses for each year, including permanent improvements, were considered and that the maintenance account kept by the hospital showed these items in detail.   He further stated that during those years the institution made and published yearly reports setting forth the various items that were included in the cost of maintenance. It also appears that the accounts of the institution disclosed every item that was counted in making up the expenses of maintenance, and that a report containing these accounts and the notice above referred to showing the rate charged by the trustees and the reason therefor, was sent annually to the officials of the county and to each of the city councilmen.   The accuracy of these accounts is now attested by the present county officials, as appears from the fact that they rely solely upon them in ascertaining the alleged overpayments.   There is, therefore, no ground for a legitimate inference that the trustees acted fraudulently in making the charges against the county originally, or that they then attempted to conceal from the county or city officials the items of expenditure from which they fixed the rate charged for the maintenance of the insane.   The books of the institution made the fullest disclosure of all the facts necessary to an intelligent understanding of the price charged to, and paid by, the county of Philadelphia for the maintenance of its indigent insane from 1885 to 1889, and this information was given the county and city officials annually by the reports sent them.   There was no concealment of the facts from either the county or the public at large.   The reports made by the trustees were available to all who were in any way interested in the management of the hospital.   If the officials of the county and city of Philadelphia did not avail themselves of the ample opportuity thus given them to ascertain the correctness of the accounts for maintenance charged against the county, it may be a dereliction of duty on their part for which they may be censurable,

but it affords no ground whatever for an allegation of fraudulent action on the part of the trustees of the hospital.

Subsequently to the act of 1889, as we have seen, the accounts were rendered under that act and the bills included simply the charges for the quarter for which they were respectively rendered. They very properly contained no reference to the accounts for the years 1885 to 1889 which, as claimed by the trustees, had been closed and paid. If it be conceded, however, that the trustees misinterpreted the act of 1883 and that these accounts were erroneous in not allowing a credit for the alleged overpayments, there is not a particle of evidence tending to show that the plaintiffs knew or believed the fact or that they intentionally or fraudulently concealed it in rendering subsequent accounts. The learned trial judge was therefore clearly right in charging as follows: "I now say to you that there is not in the whole body of evidence presented to the court and jury, any evidence that can be submitted to the jury, tending to show that the plaintiffs made affirmative efforts to divert or mislead the defendant from discovering that the original payments, at any time between 1885 and 1889, had been improperly exacted."

The judgment is affirmed.