## Perkins et al. v. Philadelphia National Bank

*Wolf, Block, Schorr & Solis-Cohen*, for plaintiffs.
*Frederick H. Spotts*, for defendant.

MacNEILLE, J., July 6, 1933.—At the trial this case resulted in a verdict by the jury in favor of the plaintiffs, whereupon defendant filed a motion for new trial and motion for judgment n. o. v. We dismiss the motion for a new trial

inasmuch as we believe the matter is properly disposed of on the motion for judgment n. o. v.

The facts are as follows:

The plaintiffs, Perkins and McNeely, sold to Abram J. Stybel of Moscow, Russia, certain quantities of leather to be delivered to him during the time of the World War. Arrangements to ship the leather were made by the plaintiffs with Gerhard & Hey, Inc., who were engaged in the business of transportation. Gerhard & Hey, Inc., delivered the bills of lading to the plaintiffs, who attached them to drafts on Stybel so that the bills of lading would be delivered to Stybel only upon payments of the drafts. Plaintiffs endorsed the drafts in blank and discounted them at Philadelphia National Bank, the defendant in this case. The defendant sent the drafts, with the bills of lading attached, to its agent, Moscow Industrial Bank, with instructions to deliver the bills of lading to Stybel only upon payment for the drafts. Some time after Moscow Industrial Bank, the agent of the defendant, received the drafts and bills, a revolution caused upset conditions in Russia and the Moscow Bank was closed—that is, in October of 1917, the Soviet Republic took over the government of Russia and several weeks later it took over the banks, including Moscow Industrial Bank.

About this time, defendant notified plaintiffs that the drafts had remained unpaid for so long a time that it desired Perkins and McNeely, the plaintiffs, to return to it the money it had advanced on the drafts, and Perkins and McNeely, the plaintiffs, did this. They now claim they and the bank—that is, the plaintiffs and defendant—believed that the Moscow Bank was closed by order of the government and that the drafts with the bills of lading attached were in the Moscow Bank and therefore beyond the possibility of negotiation. Subsequent events show that the bills of lading were negotiated, but we are without definite evidence as to when. If they were in the Moscow Bank at the time of the alleged mutual mistake, then there was no mistake of fact, provided both parties to this suit believed they were in the bank.

It is not quite clear from the pleadings nor from the testimony that both the plaintiffs and defendant regarded their transaction as an ordinary discount. Some of the conduct of the plaintiffs is consistent with the theory that they regarded the transaction as one of discount. On the other hand, the attitude of the defendant in the pleadings, as well as at trial, was that it was a purchase of the notes. However, the case was tried by the plaintiffs and defendant on the theory that the notes were sold by the plaintiffs to the defendant, and in that light we are considering the questions involved. In view of this attitude, the following facts become important:

On February 21, 1918, the drawee, Stybel, wrote the defendant, in reply to its cable, and informed the defendant that the defendant's inquiry as to the payment of the drafts had been referred to the Moscow Bank. On March 16, 1918, the plaintiffs wrote the defendant requesting it not to recall the two drafts involved in this litigation but to hold them without protest in Russia until further notice was given by the plaintiffs. On March 28th, defendant was advised by cable, from its correspondent bank, that the drafts were not paid. On April 23d of the same year, defendant informed the plaintiffs that the drafts were not paid and that revolutionary conditions in Russia rendered it impossible to do business. Defendant requested the plaintiffs to pay it the amount of the drafts, and, accordingly, the plaintiffs paid the defendant $60,063.81, being the face value of the two drafts, and at the same time the plaintiffs requested the defendant to cancel the outstanding drafts. Defendant cabled Moscow in an effort so to do. A few days later, on April 27th, plaintiffs requested defendant to withdraw the cancellation. Subsequently, A. J. Stybel replied by letter, on

May 9, 1918, to the defendant's cable which had requested the return of the two drafts, informing defendant that such instructions must be given to the bank.

The plaintiffs made no further inquiry until October 23, 1918, when they requested information from the defendant as to the status of the drafts. The situation was continued until July of 1919, when Stybel appeared in Philadelphia with one of the four bills of lading which had formerly been attached to a draft. He admitted that none of the drafts had been paid and was unable to tell how he had secured this one bill of lading. Stybel thereupon paid to the plaintiffs the total amount of the two drafts and the goods which were still in the possession of Gerhard & Hey, for transportation, were thereupon turned over to Stybel, not only for the bill of lading which he produced but for the other three bills of lading which were not produced. Gerhard & Hey demanded from the plaintiffs, and the plaintiffs furnished them, an indemnifying bond covering the three outstanding bills of lading.

In March of 1921, Herman Solnicki appeared and presented to the carrier, Gerhard & Hey, two bills of lading and demanded the goods. He subsequently brought suit and obtained a judgment which was finally settled for $22,000, which the plaintiffs, because of their bond of indemnity, were obliged to pay. Two and a half years later, Philip Ebin appeared and produced the remaining bill of lading, and the plaintiffs paid $3,807 in settlement of his claim.

In each of these instances, settlement was made after notice to the defendant and agreement between plaintiffs and the defendant that the settlement should be made without prejudice to whatever rights plaintiffs might have against defendant.

The theory of the plaintiffs' claim is that their payment to the defendant, on April 24, 1918, was made under a mutual mistake of fact. Plaintiffs now contend that the bills of lading must have been detached from the drafts and were not in possession of the Moscow Bank on April 24, 1918, as they believed they were.

Although payment by the plaintiffs was made 8 years before the institution of the suit, they argue that they are not precluded by the statute of limitations, since they did not discover their mistake until March of 1921, when Solnicki appeared.

While it is true that an involuntary payment made under a mutual mistake of fact may be recovered if recovery is sought within the statutory period, it is also true that the statute begins to run from the time of the payment, unless the party who made the payment had no means of ascertaining the true facts and could not by diligent effort ascertain them: Ridgway's Account, 206 Pa. 587. But we are not satisfied that in the instant case payment was involuntary. We find in the testimony no element of coercion. The payment made by the plaintiffs seems to us to have been voluntary—at least they voluntarily surrendered their right to return the drafts, inasmuch as they had previously requested the defendant not to recall the drafts but to hold them without protest in Russia until further instructions. This request by the plaintiffs was made on March 16, 1918, more than a month prior to the payment.

We do not rest, however, on the fact that the payment was voluntary. The only evidence offered to prove that the bills of lading were not in the Moscow Bank at the time of the payment is the evidence of Stybel, who says, inasmuch as his signature appeared on two of the bills of lading, he must have had them, and since he was unable to obtain anything from the bank subsequent to October 1917 he inferred that he obtained them prior to that time. Thus he is inferring that he had the bills because he infers that he could not have gotten them after

the bank closed. We have an inference drawn from an inference, and not from a fact. There is no testimony to indicate the date on which he obtained possession of the drafts. In order to prove a mutual mistake of fact clear and convincing evidence must be produced: Claybaugh v. Goodchild, 135 Pa. 421.

We have a still greater difficulty in this case. Even if we assume that the payment of the plaintiffs was involuntary, and if we further assume that payment was made under a mutual mistake of fact, the defense of the statute of limitations precludes a recovery by the plaintiffs. During the month of July 1919, plaintiffs had positive information that the bills of lading had been separated from the drafts and might not have been in possession of the Moscow Bank at the time of the payment to the defendant.

It was in July 1919 that Stybel appeared and produced bill of lading No. 3395 and informed the plaintiffs that neither of the drafts had been paid. Instead of making inquiries, the plaintiffs chose to sleep on their rights until after two of the bills of lading were produced by a third party in March of 1921, and a third draft produced by a third party in August 1923. Then, on March 24, 1926, plaintiffs issued their writ.

We cannot say that the plaintiffs used reasonable effort to ascertain the status of the drafts from the time of their payment to the defendant to the institution of the suit in 1926. We may have some doubt as to the running of the statute from the time of the payment made by the plaintiffs to the defendant in 1918, but we can have no doubt that the statute began to run from July of 1919. See Riley v. Boynton Coal Co. et al., 305 Pa. 364, and Patton et al. v. Commonwealth Trust Co., Executor, et al., 276 Pa. 95. Nor are we impressed with plaintiffs' contention that the statute begins to run in the case of a payment under a mutual mistake of fact from the date of demand for restitution. See Guarantee Trust and Safe Deposit Company v. Farmers and Mechanics National Bank, 202 Pa. 94. This is particularly true where, as in the instant case, there is no element of fraud or concealment on the part of the defendant. Liability may not be predicated on the theory that defendant is responsible for the negligence of its correspondent bank. Prior to April 24, 1918, defendant was the owner of the two drafts by purchase from the plaintiffs, and the Moscow Bank was the agent of the defendant. The defendant would have been responsible for carelessness on the part of its agent if suit had been instituted within the statutory period, but not otherwise.

If the plaintiffs had not in March of 1918 requested the defendant to allow the drafts to remain without protest in Russia instead of recalling them, it might have been ascertained that the default had occurred prior to April 24, 1918.

The plaintiffs became the owners of the drafts subsequent to April 24, 1918, by purchase from the defendant, and from that time on the status of the defendant was merely that of the transmitting bank and it was no longer responsible for any subsequent default on the part of the Moscow Bank: New York Hotel Statler Co., Inc., v. Girard National Bank, 87 Pa. Superior Ct. 94; Jacobs v. Mohnton Trust Company, 299 Pa. 527.

However, the plaintiffs had positive information of the default in July of 1919, and did not institute their suit until after the statutory period.

We have viewed the testimony in the light most advantageous to the plaintiffs and have given them the benefit of every fact and inference of fact, but the conclusion is inevitable that the plaintiffs are barred by the statute of limitations.

Wherefore, judgment must be entered for the defendant on the motion for judgment n. o. v.