McNeely et al., Trustee, Appellant, *v.* Philadelphia National Bank.

Argued January 15, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Philip Werner Amram,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellant.—The Moscow Bank was the agent of the defendant and the defendant was responsible for its acts: Gurdus v. Bank, 273 Pa. 110.

The statute of limitations runs against the recovery of moneys paid under a mutual mistake of fact from the date when the payor knew or ought or could have discovered the mistake, and runs from the date of payment only if the payor at that time ought or could have discovered the mistake: Montgomery's App., 92 Pa. 202; Ridgway's Account, 206 Pa. 587; Holland Turnpike Co. v. Ins. Co., 144 Pa. 541; Scranton Gas & Water Co. v. Iron & Coal Co., 167 Pa. 136.

The action is essentially an equitable one although brought in common law form and, therefore, the equitable statute of limitations running from the time of discovery should apply rather than the strictly legal statute: Dorsey v. Jackson, 1 S. & R. 42; D'Utricht v. Melchor, 1 Dallas 428; Cunningham v. Garvin, 10 Pa. 366; Zacharias v. Zacharias, 23 Pa. 452; Lewey v. Coke Co., 166 Pa. 536; Schwab v. Cornell, 306 Pa. 536; Com. v. Twp., 276 Pa. 172; Johnson v. Rutherford, 10 Pa. 455.

The payments by plaintiffs to defendant were not "voluntary" payments: Com. v. Morse, 9 D. & C. 41; Carson v. McFarland, 2 Rawle 118; Hinckle v. Eichelberger, 2 Pa. 473; Montgomery's App., 92 Pa. 202; Bomgardner v. Blatt, 35 Pa. Superior Ct. 361.

*Frederick H. Spotts,* with him *Ernest Scott,* for appellee.—In order to prove a mutual mistake of fact clear

and convincing evidence must be produced: Claybaugh
v. Goodchild, 135 Pa. 421; Gorman v. Braham's Sons,
298 Pa. 142.

The plaintiffs were not mistaken as to any fact.

The payments were purely voluntary.

In the absence of fraudulent concealment, the running
of the statute of limitations is not prevented, although
the party having a right of action was ignorant of its
existence: Guarantee Trust Co. v. Bank, 202 Pa. 94;
Steele v. Steele, 25 Pa. 154; Montgomery's App., 92 Pa.
202; Clapp v. Twp., 138 Pa. 35; Turnpike Co. v. Ins.
Co., 144 Pa. 541; Ferguson v. Yard, 164 Pa. 586; Scran-
ton Gas Co. v. Iron Co., 167 Pa. 136; Mifflin Bank v.
Bank, 199 Pa. 459; Noonan v. Pardee, 200 Pa. 474;
State Hospital v. County, 205 Pa. 336; Ridgway's Ac-
count, 206 Pa. 587; Stucker v. Shumaker, 290 Pa. 346;
Com. v. Donnelly, 36 Pa. Superior Ct. 619.

OPINION BY MR. JUSTICE KEPHART, March 19, 1934:

Perkins and McNeely of Philadelphia, manufacturers
of glazed kid, in June and July, 1917, shipped some
leather to Stybel, a merchant at Moscow, by way of
Seattle, and Kobe, Japan. Four bills of lading endorsed
in blank and attached to two drafts payable in dollars,
drawn on Stybel, covered the order. The drafts were
discounted or sold to Philadelphia National Bank, ap-
pellee, for their face value, $60,063.81. Appellee for-
warded the drafts, with bills of lading attached, to the
Moscow Industrial Bank for presentation and payment,
with instructions not to deliver the bills until the drafts
were paid. The leather was held in transit at a ware-
house in Seattle as a result of the World War.

In 1917, the revolution occurred in Russia and the
Soviet Republic took over the Moscow Industrial Bank.
On April 23, 1918, appellee wrote Perkins and McNeely
it had received a cable from Moscow (March 28, 1918)
stating the drafts were not paid and the banks in Russia
were under government domination to the extent that

general banking was practically impossible. "There does not seem to be any possibility that your drafts can be paid in the near future." It thereupon requested repayment of its advance with interest. The next day appellants repaid the Philadelphia National Bank the $60,063.81.

Appellee had been requested by appellants on March 16, 1918, to hold the drafts in Russia without protest until further notice, but on April 24th appellee was instructed to cancel the drafts, which it immediately did by cable to the Moscow bank. Later it was directed to recall the cancellation. Whether this was done does not appear. In July, 1919, Stybel appeared in Philadelphia with one of the bills of lading and wished to secure the leather. He stated that no draft in the transaction had been paid. Appellants accepted $60,063.81 from Stybel, furnished an indemnity bond to the carrier to save it harmless against subsequent demands for the leather by persons who might present the other bills of lading, and thus procured delivery of the leather to Stybel.

Two years later Herman Solnicki, also of Russia, appeared with two bills of lading covering portions of the leather involved, and demanded the goods from the carrier. Not receiving the merchandise, he brought suit in New York against the carrier, which appellants defended; judgment was recovered for the sum claimed, which appellants afterwards liquidated. A year later Philip Ebin produced the fourth bill of lading and demanded the goods covered by it. His claim was settled for some $3,800.

Having thus lost out on the indemnity, appellants brought this action to recover the amount they had previously repaid to the bank, less what they had managed to salvage through the first bill presented by Stybel. Appellants' claim was that such repayment was made under a mutual mistake of fact. The jury found for appellants $58,021.37, but judgment for appellee was entered n. o. v. by the court below for the reasons, first, that

there was no mutual mistake of fact, and, second, admitting there was a mutual mistake of fact, the enforcement of appellants' claim was barred by the statute of limitations.

Appellants' whole case is based on a payment of money made under a mutual mistake of fact. A mutual mistake of fact is a clear impression in the minds of the parties as to the existence of a material fact, sufficient in importance to influence and govern a man of ordinary intelligence, and on which both parties relied and acted, which fact did not exist. To show mistake, the fact contrary to the belief of the parties must not only be made to appear definitely but must be shown to have existed at the time the parties had a different impression. There can be no mutual mistake as to a fact to come into being in the future.

The burden of proof rests on the party suffering a detriment through his action under a mistake of fact. All elements of the mistake of fact must be shown by clear and definite proof. Vague and ambiguous statements indicating the existence of more than one fact, or different variations of the same fact, do not attain the required probative standard.

In the instant case, the fact alleged to have been mutually believed was that, at the time of payment by appellants, the drafts with the bills of lading attached were in the bank at Moscow. It is stated that this fact was of sufficient importance as to warrant the predicating of action thereon, and that the parties did act on such belief. Appellants, to show this impression erroneous, must prove that at the time the parties acted the drafts and bills of lading were not in or under the control of the bank at Moscow. Their effort resulted in total failure to meet this burden of proof. The force of their entire case in this aspect lies in selecting some expression from Stybel's testimony, and from it endeavoring to show by inference alone that the drafts were not in the Moscow bank. The foundation of this argument omits

the basic factor in all of Stybel's testimony. It is admitted the drafts were never paid, never returned, never heard of after they were in the possession of the Moscow bank. The bills of lading at some time were detached therefrom. These bills bear Stybel's endorsement in blank. It was therefore important for appellants to show possession by Stybel in 1917, or lack of possession by the bank at that time. When he was asked the question, "Did you at any time have these bills of lading in your possession?"—he replied in this artful fashion, and on this rests the value of his whole testimony: "If I signed, then it must have been in my possession." From there on all questions and answers are predicated on that possession. From that inferential conclusion, Stybel creates another conclusion equally inferential when he fixes the time of possession. He does it this way: "They must have been in my possession before December, 1917, as the Bolsheviki government had taken possession of all the banks in Russia."

Without commenting at this time on Stybel's statements given at another and prior time and under most important circumstances, wherein he stated that the bills of lading were in the possession of the Moscow bank as late as 1919, we emphasize that Stybel used these cunning and deft expressions calculated to throw out inferences of fact without definitely stating the facts to have been in existence. Mistake of fact, as stated above, cannot be shown by vague and ambiguous statements admitting of many conclusions. It must appear from clear and definite statements of fact. Stybel made no clear or definite statements of fact. "If I signed, then they must have been in my possession." That could be literally true and yet the bills of lading remain in the possession of the bank, being temporarily in Stybel's custody as he endorsed them for the purpose of future negotiation or to facilitate their sale and the sale of the leather which they represented. This testimony is not sufficient to show that the bills of lading were not in

possession of the bank at the time the money was paid over by appellants. That they afterwards turned up in the possession of individuals in America is no proof they were not in the bank at that time. There were many ways to have secured these bills from the bank at Moscow after the Bolsheviks took possession, and after reading Stybel's testimony we are not altogether certain that he did not know more about these bills than is placed on the record.

He definitely stated he could not have procured the bills unless the drafts had been paid, and that they were never paid. The proof of mistake of fact was not "clear, full and definite" (Claybaugh v. Goodchild, 135 Pa. 421) and appellants failed to prove that the drafts and bills were not in the Moscow bank when the payment was made to appellee. We therefore conclude that there was no mistake of fact shown; but, even if there were, the mistake must have been mutual.

Mutuality is of as much importance as the erroneous impression of the existence of the fact. Appellants' representative who conducted the negotiation with appellee's officer, was called to prove mutuality. He stated that it was his opinion that the bills of lading were probably destroyed or confiscated by the Bolsheviki government. If there were other or different beliefs on which one of the parties depended, there can be no mutuality.

Another element of mistake is that the parties must rely on the erroneous impression. Appellants did not know what had happened to the bills or the Moscow bank.* They knew there was a revolution, and their

---

* Mr. Perkins, one of appellants, testified: "Q. You and Mr. Ruth you have said had discussed what had taken place in Russia? A. I knew there was a revolution there, if that is what you mean. Q. You did not know what had happened to the bank, I mean the Moscow Bank? A. No. Q. And you did not know what happened to these particular documents? A. No. Q. And you knew, of course, that they might still have been in the possession of the bank or they might not? A. Naturally, yes. Q. And know-

later conduct showed not only no positive belief as to the whereabouts of the bills at the time the money was repaid, but a disregard of that fact. In the face of absolute ignorance of the situation, apparently without belief one way or another on the part of appellants, but merely because the drafts had not been paid for a period of some nine months, and, at the request of appellee, appellants made the repayment. They were willing to take a chance of the bills turning up.

We may assume that appellee, the Philadelphia National Bank, felt that the bills of lading were in the bank at Moscow, but their correspondence demanding payment does not show this. Appellants' own witness admitted that Mr. Ruth, appellee's officer, did not know where the bills were. It is of the utmost importance that when the Philadelphia bank demanded payment, it did not base its demand on any thought that the bills of lading were in the Moscow bank, but merely that the drafts were not paid and they wanted their money back. Were we able to conclude that both parties acted with respect to the repayment in the belief that the bills were in the Moscow bank when they were not, still we doubt appellants' right to recover on the ground of mutual mistake. At the outset of the discussion it was noted that the mutual mistake, in order to justify recovery of a payment made thereunder, must be a mistake as to a material fact: that is, that the parties would not have acted but for the erroneous belief that the fact existed. Belief by the parties merely that the bills were in the Moscow bank while this bank was in the midst of riotous and disordered revolution and when all regular and orderly banking practices had been discontinued, was not sufficient to have moved both parties to action. The fact

---

ing that, you paid this money? A. Yes." Later he testified it was his "impression......that the bills of lading had practically gotten into the hands of the Revolutionary Party and that they ......were either destroyed or confiscated or something had happened to them......"

material to appellants' future liability, mistake as to which would be a mistake of fact of legal import, would be as to the return of the drafts and bills, or their cancellation, or their destruction. A mutually mistaken belief as to any of these might well justify recovery of the repayment, but belief as to the mere presence in the Moscow bank without more, obviously is without significance: it was an immaterial circumstance. Lodgment therein was purely incidental—merely raising an inference, in normal circumstances, of control of the documents.

Before any payment to appellee, appellants requested the Philadelphia bank not to recall the drafts, but to hold them in Moscow without protest until further notice; when payment was made and a check was sent for $60,000 to the Philadelphia bank, it was notified to cancel the drafts, and this was done. Obedience to this instruction had a tendency to set the bills of lading at large in Russia, and if there was any loss or damage following this step, it could have been traced directly to this conduct of appellants. They could have been protected by demanding the return of drafts and bills of lading at the time they repaid the money to the bank. Many avenues were open for their protection, all of which they failed to follow. It is difficult to see how they can assess the Philadelphia bank for their loss because of their lack of foresight.

This action was not commenced until March 24, 1926, when appellants issued their writ. It is well settled that, in the absence of fraudulent concealment by the other party or an effort to prevent knowledge, the statute of limitations begins to run from the time the payment under mistake is made. This action is for a payment of money made under an erroneous impression as to the existence of a fact. The time of discovery of the mistake has nothing to do with the cause of action unless the discovery was prevented by fraud or intentional concealment by the party benefited by the mistake: State

Hospital v. Phila. Co., 205 Pa. 336; Guarantee Trust Co. v. Farmers Bank, 202 Pa. 94. See Montgomery's App., 92 Pa. 202; Steele's Admrs. v. Steele, 25 Pa. 154. It is plain that there is no element of fraud or concealment in the actions of appellee in this case.

Judgment affirmed.