## Philadelphia v. Holmes Electric Protective Company of Philadelphia

188

*Abraham Wernick*, assistant city solicitor, and *Joseph Sharfsin*, city solicitor, for plaintiff.

*Benjamin O. Frick*, for defendant.

MACNEILLE, J., July 12, 1938.—The court gave binding instructions for plaintiff and the jury accordingly returned a verdict in the full amount of plaintiff's claim, to wit, $40,395.82, with interest, making a total of $67,737.98. We are now considering defendant's motion for a new trial and for judgment non obstante veredicto.

This is an action in assumpsit to recover a percentage of the gross receipts of defendant company for each of the respective years from March 1, 1918, to March 1, 1937, which the city alleged was due it under an ordinance of 1906, in addition to the payments which defendant company had already made to the city.

By the Ordinance of June 4, 1906 (Ordinance & City Solicitor's Opinions, 1906, p. 105), the city granted permission to defendant company "to carry its wires under and beneath the highways of the City of Philadelphia for connecting buildings occupied by its customers with its central station", and to use and operate such wires "for the purpose of conducting the business of conveying for its customers a burglar alarm, night watch, and fire alarm signal system."

The ordinance further provided in section 5 that defendant company pay "all license charges and permit fees", now or thereafter imposed by the city ordinances "upon poles, wires, fixtures and all attachments"; and that upon March 1st in each and every year thereafter, defendant company should pay into the treasury of the city 2 percent of the gross receipts of the said corpora-

tion up to $30,000, and 3 percent thereafter up to $40,000, and 5 percent thereafter "from all its business done in the said City of Philadelphia", and for the ascertainment of the amount due to the city the said company shall keep books of account containing an account of all the business done and transacted within said city, which shall be subject to the inspection of the city treasurer or his duly authorized representative.

Defendant made returns and paid to the city each respective year a percentage on gross receipts but did not include in the returns moneys received by it for the cost of construction work done by the company on customers' premises, or from inspection of what were termed "local alarms", which were situated on customers' premises and not connected with defendant's central office and which made no use of the highway.

The city made no examination of defendant company's books until March 15, 1937, when an employe of the city controller's office examined the books from June 1906, to March 1, 1937, at which time the city determined for the first time that defendant company was not including in the returns that it filed each year, in the gross receipts, the amounts received by defendant company from the said construction work and inspection of local alarms. The city prepared an itemized statement of the sums so omitted from defendant's returns for each year, beginning with March 1, 1918, and ending with March 1, 1937, it appearing that all the charges had been fully paid prior to 1918.

This statement shows that from 1918 until the date of the audit defendant company had failed to make returns on gross receipts which would entitle the city to the claim of $53,705.52 additional.

The city controller notified defendant of this audit and defendant, on May 7, 1937, sent to the city controller its check for $13,309.70, which payment covered a deduction for leased lines covering a period of six years prior to the date of the payment, which deduction defendant

admitted was improperly made, but defendant company refused to pay the balance of $40,395.82, representing a percentage on the gross receipts received by it for the cost of construction work done by the company on customers' premises and receipts from inspection of local alarms. Defendant denied such liability because the term "gross receipts", as defendant interpreted it, did not include such receipts. The city then brought suit for the amount which it claimed for each of the respective years from March 1, 1918, to March 1, 1937, and defendant filed an affidavit of defense in which it admitted the sum of $964.70 as due but did not pay the said sum to the city.

It is defendant's contention that the term "gross receipts", as used in the ordinance, did not include moneys received by defendant company for cost of construction work on customers' premises or for inspection of local alarms; that since the city had never previously asserted such claim it was estopped from now attempting to assert it, and that the city's claim for each year prior to the year beginning March 1, 1931, was barred by the statute of limitations.

Plaintiff claims that all the gross receipts include receipts from every source, and that defendant is estopped from denying its liability, and that the statute of limitations has no application to the litigation involved in this case in which a municipality is the plaintiff in its governmental capacity.

We cannot agree with the contention made on behalf of defendant that all the gross receipts provided for in the ordinance should be construed to mean some of the gross receipts. On the contrary, the term is all-embracing and includes receipts of every kind, including receipts from construction work on the premises of defendant's customers as well as from the inspection of the local alarm systems.

A question very similar to the one here involved came before the Supreme Court in the case of Commonwealth

v. Philadelphia Elec. Co., 312 Pa. 528. In that case there was involved a construction of the words "gross receipts" used in the Act of April 25, 1929, P. L. 662, which provides that every electric light company shall pay a tax of eight mills upon the dollar upon the gross receipts of the said corporation. In that case the Supreme Court used the following language:

"As to the first three questions, we think this conclusion inescapable if words are to be given their ordinary meaning. 'Every electric light company shall pay a tax of eight mills upon the gross receipts received from electric light and power business' says the act. Nothing could be plainer. In Commonwealth v. Brush Electric Light Co., 204 Pa. 249, we decided that an electric light company must pay the eight mills gross receipts tax upon its receipts from any and every source. . . . To hold, as appellant urges we should, that the tax is now limited to gross receipts from the sale of current to produce light and power, would require us to give a strained meaning to language which to us is plain. We, therefore, conclude that the court below was correct in holding that receipts derived by appellant from the sale of lamps, wire, sockets, etc., from the rental of motors, sweepers, cleaners and other machines and devices and from labor charges in connection with jobbing work and with installations for service are subject to the tax."

It will be noticed that in the ordinance involved in this litigation the term "all" is used, whereas in the statute construed by the Supreme Court the word "all" was not even included.

In the case of Commonwealth v. United States Express Co., 157 Pa. 579, 584, there came before the Supreme Court the construction of an act requiring express companies to pay eight mills upon the gross receipts of the company and the defendant attempted to deduct the amounts paid by it to railroad companies for transportation services and the Supreme Court there held that the company was not entitled to such deductions, saying:

"The tax is thus laid not upon net earnings or upon gross earnings less the amount paid other companies for transportation services, but upon the entire gross receipts of the defendant's express business done wholly within this commonwealth."

Similar conclusions have been reached in the cases of State v. Illinois Central R. R. Co., 246 Ill. 188, 92 N. E. 814, Pacific Gas & Electric Co. v. Roberts, 176 Cal. 183, 167 Pac. 845, and City of Lancaster v. Briggs et al., 118 Mo. App. 570, 96 S. W. 314.

Under the authority of the above-cited cases and from the plain language of the ordinance itself, we are therefore compelled to conclude that gross receipts from all of defendant's business includes receipts from all sources, including receipts from construction work done on defendant's customers' premises and from inspection of local firm alarms.

Defendant insists that the statute of limitations bars most of plaintiff's action—that part prior to six years before bringing suit.

In addition to Wickersham v. Russell, 51 Pa. 71, and the other cases cited, we have examined Fidelity-Philadelphia Trust Co., Trustee, v. Bergson (No. 1), 328 Pa. 545, and Ault v. Adamson, 66 Pa. Superior Ct. 374, but we do not think they are exactly in point because it may be said of them that none of those cases was brought by a county or other municipal corporation. However, we do not doubt that in proper cases the statute of limitations applies against a municipality such as is the plaintiff in this case. For instance, in Evans v. Erie County, 66 Pa. 222, it was held that the statute of limitations relating to adverse possession for 21 years is applicable to county and municipal corporations, although it did. not run against the Commonwealth. This case was cited with approval in Kearney v. Borough of West Chester, 199 Pa. 392.

It may be said that these cases were not concerned with the statute of limitations with which we have to deal;

therefore we turn to the case of Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co., 241 Pa. 469. The plaintiff was a municipal corporation and was representing the original Connecticut settlors who had leased land to John Bennett for 999 years. Bennett, thinking it to be his, undertook to devise in fee to Stephen Vaughn, who leased to defendant Lehigh Valley Coal Company the coal underlying the land. This case was an action of trespass for recovery of damages to the value of the coal by reason of the unlawful mining. In this form it involved the statute of limitations known as the Act of March 27, 1713, 1 Sm. L. 76, with which we are concerned. The court said (p. 476):

"When the title of the Commonwealth has been divested, her grantees, though artificial bodies of her own creation, are in the same category as natural persons. It has been decided that the statute runs against a county or other municipal corporation".

These cases were cited with approval in Valley Deposit & Trust Company of Belle Vernon, 311 Pa. 495.

It appears to us that the ordinance as passed by council constituted an offer upon acceptance of the terms of which by the defendant there arose a contract between the parties: Beaver County v. Beaver Valley Traction Co., 229 Pa. 565; Russell v. Sebastian, 233 U. S. 195; McKeesport v. Pittsburgh, McKeesport & Connellsville Ry. Co., 238 Pa. 591. In fact section 5 of the city ordinance reads:

". . . and the said Company in consideration of the privileges hereby granted, shall promptly pay any and all license charges and permit fees now imposed".

Therefore, we have before us a suit brought in assumpsit and based on a contract which falls within the wording of the Act of 1713, supra, covering "actions of debt, grounded upon any lending, or contract without specialty".

Nor can we agree with the contention of plaintiff that the defense of the statute of limitations was waived by

the payment made by defendant on May 7, 1937, in the sum of $13,309.70. This payment did not toll the statute because it applied entirely to a deduction for leased lines covering a period of six years prior to the date of payment, and did not apply to the gross receipts for any of the years prior to March 1, 1931, and, therefore, cannot bar defendant from pleading the statute of limitations.

To toll the running of the statute, the acknowledgment must not only be clear, distinct, and unequivocal of the existence of a debt, but must plainly be referable to the very debt upon which the action is based: Foringer v. Sisson, 14 Pa. Superior Ct. 266, 271. In this case the court further said:

"It would seem strange, if a debtor cannot pay that part of a claim which he admits he owes, at the same time denying liability for, and expressly refusing to pay, the balance, without incurring the risk of having his act construed, after his death, as an unequivocal acknowledgment of the whole claim, and any inferential promise to pay it."

In the case of Graham v. Keys, 29 Pa. 189, it was held that an acknowledgment and offer to pay the principal of a debt, coupled with a refusal to pay the accrued interest, is sufficient to take the principal but not the interest out of the statute of limitations.

It is, therefore, apparent that under the authority of the above-cited cases, we are obliged to hold that the payment made by defendant did not prevent it from pleading the statute of limitations.

Nor can we agree with the contention made on behalf of plaintiff that defendant is prevented from taking advantage of the statute of limitations because it did not file proper returns and in that way misled plaintiff. There was certainly nothing in the testimony to show any fraudulent concealment on the part of defendant, but, on the contrary, nothing more than an honest mistake of the interpretation of the ordinance. Plaintiff had

ample opportunity to examine the books of defendant, but failed to do so, and under those circumstances there is nothing to prevent the barring operation of the statute of limitations.

In the case of McNeely et al., Trustee, v. Philadelphia National Bank, 314 Pa. 334, 342, which was also an appeal from our Court of Common Pleas No. 3, and where a similar question was involved, the Supreme Court said:

"This action was not commenced until March 24, 1926, when appellants issued their writ. It is well settled that, in the absence of fraudulent concealment by the other party or an effort to prevent knowledge, the statute of limitations begins to run from the time the payment under mistake is made. This action is for a payment of money made under an erroneous impression as to the existence of a fact. The time of discovery of the mistake has nothing to do with the cause of action unless the discovery was prevented by fraud or intentional concealment by the party benefited by the mistake: State Hospital v. Phila. Co., 205 Pa. 336; Guarantee Trust Co. v. Farmers Bank, 202 Pa. 94. See Montgomery's App., 92 Pa. 202; Steele's Admrs. v. Steele, 25 Pa. 154. It is plain that there is no element of fraud or concealment in the actions of appellee in this case."

There is nothing in this case to prevent the operation of the statute of limitations as to any part of the claim that was more than six years old at the time the suit was started.

We are of opinion that there is no clear evidence of fraud exercised by defendant, but if there were we should still have the question as to whether plaintiff exercised reasonable diligence on its part. It never made the slightest effort at inspection until 31 years had elapsed, and upon this first occasion it immediately ascertained the matters of which it complains. It is clear that it could have done so at any prior time. This was not reasonable diligence upon its part.

For the reasons indicated, the verdict is reduced to the sum of $20,280.69, and defendant's motion for a new trial is discharged and defendant's motion for judgment non obstante veredicto overruled.