**FIRESTONE & PARSON, INC., et al.**

**v.**

**The UNION LEAGUE OF PHILADELPHIA.**

**Civ. A. No. 86–5856.**

United States District Court,
E.D. Pennsylvania.

April 14, 1987.

Nancy O. Ezold, Philadelphia, Pa., for plaintiffs.

Kell Damsgaard, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

For many years, the defendant, the Union League of Philadelphia, was the owner of an oil painting, the *Bombardment of Fort Sumter,* which was generally regarded in art circles as being a major work of a renowned American landscape artist, Albert Bierstadt. On August 31, 1981, plaintiffs purchased that painting from the defendant for $500,000. At that time, the parties all believed, and the defendant allegedly represented, that the painting was indeed the work of Bierstadt.

In the spring of 1985, however, some art historians began to express doubts about the accuracy of the attribution. Plaintiffs brought these questions to defendant's attention, but the defendant reiterated its view that the painting was a Bierstadt. Ultimately, in the February 1986 issue of "Antiques" magazine, there appeared an article by a noted art historian, Alfred C. Harrison, Jr., entitled "Bierstadt's Bom-

bardment of Fort Sumter Reattributed", which expressed the writer's firm opinion that a Confederate artist, John Ross Key, and not Bierstadt, was the producer of the painting. This view has now come to be generally accepted among art experts.

Asserting that the painting, as a genuine Bierstadt, was worth more than the $500,-000 purchase price, but, as the work of Key, is worth only about $50,000, plaintiffs filed this lawsuit on October 6, 1986, seeking rescission and damages. Defendants have filed a motion to dismiss on the ground that plaintiff's action is barred by the applicable statute of limitations. That legal issue is now ripe for decision.

The transaction occurred in Pennsylvania, and the parties' rights are governed by Pennsylvania law. 42 Pa.C.S.A. § 5525 provides:

"§ 5525. *Four-Year Limitation*

"The following actions and proceedings must be commenced within four years:

"(1) an action upon a contract, under seal or otherwise, for the sale, construction or furnishing of tangible personal property or fixtures;

"(2) Any action subject to 13 Pa.C.S. § 2725 (relating to statute of limitations in contracts for sale);

"(3) An action upon an express contract not founded upon an instrument in writing."

The Uniform Commercial Code provision referred to reads:

"§ 2725. *Statute of Limitations in Contracts for Sale*

"(a) General Rule—An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

"(b) Accrual of Cause of Action—A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made ... [exceptions not applicable]."

The defendant argues that these statutory provisions, singly and in combination, mandate the conclusion that the claims alleged by plaintiffs all accrued in August 1981, hence this action, filed in October 1986, is untimely as a matter of law.

Plaintiffs counter with a variety of arguments. First, they argue that, whatever the correct limitations period under Pennsylvania law, it did not begin to run until February 1986, or the spring of 1985 at the earliest—when doubts about the accuracy of the attribution of the painting began to surface. They further contend that this is, in principal part, an action to rescind the sales contract because of a mutual mistake of fact, and the limitations provisions quoted above do not apply to such actions. Rather, plaintiffs assert, Pennsylvania's six-year "catchall" limitations statute, 42 Pa.C.S.A. § 5527(6) applies; moreover, the claim did not accrue until the parties learned of the mutual mistake.

In addition to these arguments, plaintiffs contend that the applicable statute of limitations was equitably tolled by defendant's continued assertions, even after doubts were expressed by others, that the painting was a genuine Bierstadt. Finally, plaintiffs argue that, in part, their claims are based upon fraud, for which the applicable limitations period was then six years.

## I. FRAUD

It is probably correct that, at the times involved in this case, there was no limitations statute expressly dealing with claims based upon fraud, and that, therefore, the catchall six-year provision applied to such claims. But it is quite clear that plaintiffs have not alleged, and cannot now be permitted to contend, that their claims are based upon fraud. By specifically alleging in their Complaint that the painting had long been attributed to, and was generally recognized as the work of, Bierstadt; that, at the time of the sale, both parties believed it was a Bierstadt; and that the alleged mistake in attribution did not become known until February 1986, plaintiffs have ruled out any genuine claim of fraud on the part of the defendant.

## II. DETERMINING THE CORRECT LIMITATIONS PERIOD

Plaintiffs are art dealers, and a painting is a "good" within the meaning of

the Uniform Commercial Code. It is difficult to avoid the conclusion that, fundamentally, this is "an action for breach of [a] contract for sale" governed by the four-year limitations of 13 Pa.C.S.A. § 2725, and that the claims accrued at the time of delivery. Plaintiffs seek to escape this outcome by characterizing their lawsuit as a claim for rescission of the contract, based upon mutual mistake of fact. But this is indistinguishable from asserting that plaintiffs had a right to, and did, revoke their acceptance of the painting. It can scarcely be argued that the purported revocation of acceptance occurred within a reasonable time; but whether or not the right to revoke acceptance was timely asserted, litigation predicated upon it falls within § 2725. Moreover, although this is not controlling, it should be noted that plaintiffs are asking for damages for lost profits, and at least to that extent their lawsuit is for breach of warranty.

Irrespective of the applicability of the Uniform Commercial Code, the same result—application of a four-year limitations period—is mandated by 42 Pa.C.S.A. § 5525(1) and (3). Accordingly, I conclude that Pennsylvania law provides a four-year limitations period for cases of this kind.

## III. DETERMINING WHEN PLAINTIFFS' CLAIMS ACCRUED FOR LIMITATIONS PURPOSES

■ Under the Uniform Commercial Code, the analysis proceeds as follows: Defendant agreed to sell, and plaintiffs agreed to buy, a painting by Bierstadt. What was delivered, however, did not conform to the contract because it was not a Bierstadt painting. Under 13 Pa.C.S.A. § 2725(b), plaintiffs' cause of action accrued "when the breach occurr[ed], regardless of [plaintiffs'] lack of knowledge of the breach" and the breach of warranty occurred "when tender of delivery [was] made."

Plaintiffs argue for application of a "discovery" rule—*i.e.*, a holding that plaintiffs' claims did not accrue until they discovered the error, or reasonably should have discovered it. For several reasons, I reject that argument.

In the first place, the Uniform Commercial Code language quoted above expressly rules out that contention. Pennsylvania courts do not extend the "discovery rule" exception to commercial transactions. In *McNeely v. Philadelphia National Bank,* 314 Pa. 334, 172 A. 111 (1934), it was held that a suit to recover money allegedly paid under a mistake of fact was barred because not made within the limitations period measured from the date of payment, and not from the later date when the mistake was discovered. The Pennsylvania Supreme Court stated specifically,

"It is well settled that, in the absence of fraudulent concealment by the other party or an effort to prevent knowledge, the statute of limitations begins to run from the time payment under the mistake is made. This action is for a payment of money made under an erroneous impression as to the existence of a fact. The time of discovery of the mistake has nothing to do with the cause of action...." *Id.* at 342, 172 A. at 114.

Moreover, and perhaps more to the point, the fact that Harrison's article did not appear until February 1986 does not readily translate into the conclusion that plaintiffs could not reasonably have learned of the alleged error in attribution long before that date.

## IV. EQUITABLE TOLLING

■ There is plainly no merit in plaintiffs' tolling arguments. The time limit for filing suit is not extended by reason of the adversary's refusal to agree that the claim is valid.

## V. CONCLUSION

■ Plaintiffs' claims, if any, accrued at the time of sale. The limitations period is four years. This action is time-barred.

Although the procedural posture of the case is such that only the statute of limitations bar can now be addressed, my ruling that plaintiffs' claims are time-barred should not be interpreted as suggesting that plaintiffs' claims would otherwise have

been valid: in the arcane world of high-priced art, market value is affected by market perceptions; the market value of a painting is determined by the prevailing views of the marketplace concerning its attribution. Post-sale fluctuations in generally accepted attributions do not necessarily establish that there was a mutual mistake of fact at the time of the sale. If both parties correctly believed at that time that the painting was generally believed to be a Bierstadt, and in fact it was then generally regarded as a Bierstadt, it seems unlikely that plaintiff could show that there was a mutual mistake of fact.